## PHOENIX LEASING, INC. *v.* PETER KOSINSKI
### (AC 16763)

O'Connell, C. J., and Spear and Freedman, Js.

Argued December 5, 1997—officially released February 10, 1998

*Joshua W. Cohen*, for the appellant (defendant).

*Seymour N. Weinstein*, for the appellee (plaintiff).

*Opinion*

O'CONNELL, C. J. The defendant appeals, following a trial to the court, from the judgment in favor of the plaintiff in an action brought to enforce a California judgment. The defendant claims that the trial court

improperly (1) found that the California court had jurisdiction over the defendant and (2) denied his special defense of unreasonable disposition of collateral in violation of article nine of the Uniform Commercial Code. The defendant further claims that the plaintiff is barred from recovering judgment in this state because it failed to comply with article nine of the Uniform Commercial Code. We affirm the judgment of the trial court.

The plaintiff brought this action to enforce a $37,199.18 judgment rendered in the Superior Court for Marin County, California, against KCM, Inc., doing business as Kosinski Associates (KCM), and Peter Kosinski. The Connecticut action was brought solely against Peter Kosinski.

The factual predicate for the California action was the plaintiff's lease of certain construction estimating equipment and software to KCM and Kosinski's personal guarantee of KCM's performance. The guarantee contained the following forum selection clause: "It is agreed that exclusive jurisdiction and venue for any legal action between the parties arising out of this Guaranty shall be in the Superior Court for Marin County, California." Pursuant to that clause, the plaintiff obtained the California judgment and subsequently brought the Connecticut action to enforce it. Because the California judgment was obtained by default based on the defendant's failure to appear, the plaintiff could not proceed under the Uniform Enforcement of Foreign Judgments Act. General Statutes § 52-604. Accordingly, the plaintiff instituted this proceeding as a common law action.

I

This case implicates the full faith and credit clause of the United States constitution, which explicitly provides in article four, § 1, that "Full Faith and Credit

shall be given in each State to the . . . judicial Proceedings of every other State. . . ." "As a matter of federal law, the full faith and credit clause requires a state court to accord to the judgment of another state the same credit, validity and effect as the state that rendered the judgment would give it." *Packer Plastics, Inc.* v. *Laundon,* 214 Conn. 52, 56, 570 A.2d 687 (1990).

The United States Supreme Court has declared that interpretation of the full faith and credit clause is a question of federal law and that state courts are bound by its decisions concerning the criteria for applying the clause. *Thomas* v. *Washington Gas Light Co.,* 448 U.S. 261, 271 n.15, 100 S. Ct. 2647, 65 L. Ed. 2d 757 (1980). The federal rule includes the proposition that lack of jurisdiction in the original state renders a foreign judgment void. *Underwriters National Assurance Co.* v. *North Carolina Life & Accident & Health Ins. Guaranty Assn.,* 455 U.S. 691, 704–705, 102 S. Ct. 1357, 71 L. Ed. 2d 558 (1982). "A party can therefore defend against the enforcement of a foreign judgment on the ground that the court that rendered the judgment lacked personal jurisdiction, unless the jurisdictional issue was fully litigated before the rendering court or the defending party waived the right to litigate the issue." *Parker Plastics, Inc.* v. *Laundon,* supra, 214 Conn. 56. The defendant argues that the California judgment is not entitled to full faith and credit in Connecticut because the California court lacked jurisdiction over him. Because the California court did not litigate jurisdiction, we must address that issue here.

"The United States Supreme Court has consistently held . . . that the judgment of another state must be presumed valid, and the burden of proving a lack of jurisdiction rests heavily upon the assailant. . . . Furthermore, the party attacking the judgment bears the burden of proof regardless of whether the judgment at issue was rendered after a full trial on the merits or after

an ex parte proceeding." (Citations omitted; internal quotation marks omitted.) Id., 57. The defendant is attempting to mount a collateral attack on the California judgment. To be successful, he must establish that the California judgment is void, not merely voidable. *Rathkopf* v. *Pearson*, 148 Conn. 260, 265, 170 A.2d 135 (1961). "Broadly stated, this would require proof of the lack of a legally organized court or tribunal; lack of jurisdiction over the subject matter, the parties, or both; or want of power to grant the relief contained in the judgment." Id.

The defendant focuses on lack of jurisdiction over his person. "Unlike subject matter jurisdiction, however, personal jurisdiction may be created through consent or waiver." *United States Trust Co.* v. *Bohart*, 197 Conn. 34, 39, 495 A.2d 1034 (1985). Thus, in commercial transactions, parties often consent to resolve disputes in a particular jurisdiction by incorporating forum selection clauses into their contracts. Connecticut case law is clear that the courts will uphold an agreement of the parties to submit to the jurisdiction of a particular tribunal. Id., 42; *Fairfield Lease Corp.* v. *Romano's Auto Service*, 4 Conn. App. 495, 498, 495 A.2d 286 (1985).

The defendant argues that the forum selection clause at issue here does not provide California with personal jurisdiction over him because it fails to establish the minimum contacts required by due process before a court may exercise jurisdiction over a defendant. See *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). The defendant cites no cases in which the minimum contacts rule has been relied on to void a forum selection clause. Indeed, forum selection clauses have generally been found to satisfy the due process concerns targeted by the minimum contacts analysis. See *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

"The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. [T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. . . . This basic tenet of foreseeability has given rise to the specific corollary that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . . Absent a showing of fraud or overreaching, such forum clauses will be enforced by the courts. *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 10–12, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)." (Citations omitted; internal quotation marks omitted.) *United States Trust Co.* v. *Bohart,* supra, 197 Conn. 41–42.

In the present case, there is no evidence of fraud or overreaching by the plaintiff. Rather, the defendant claims that he failed to read the guarantee containing the forum selection clause, despite the fact that as a businessman he was accustomed to entering into business contracts. " 'The general rule is that where a person [who is] of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is [that person's] duty to read it and notice of its contents will be imputed to [that person] if [that person] negligently fails to do so. . . .' " *First Charter National Bank* v. *Ross,* 29 Conn. App. 667, 671, 617 A.2d 909 (1992), appeal dismissed, 228 Conn. 203, 635 A.2d 796 (1994) (certification improvidently granted). This rule is qualified by the intervention of fraud, artifice or mistake not due to negligence. Id. The evidence showed that the lease and guarantee were presented to the defendant by his corporate controller; no representative of the plaintiff was present. There was no evidence of coercion, fraud or mistake. Thus, the defendant had a duty to read the guarantee and

cannot now plead his self-induced ignorance of its contents.

The defendant argues that by signing the guarantee containing the forum selection clause, he waived his rights under the due process clause of the United States constitution. The defendant then claims that since his "waiver" was not intentional, knowing and voluntary, it was not valid. The defendant's argument is flawed for two reasons. First, the defendant fails to identify a single case holding that a forum selection clause constitutes a waiver of due process rights. The defendant mistakenly cites *D. H. Overmyer Co.* v. *Frick Co.*, 405 U.S. 174, 92 S. Ct. 775, 31 L. Ed. 2d 124 (1972), for this proposition. Contrary to the defendant's suggestion, *Overmyer* held only that parties to a contract may agree in advance to waive their due process rights *to notice and a hearing.* Id., 185–87. Although *Overmyer* mentions the well established ability of parties to agree in advance to submit to the jurisdiction of a particular court, it never asserts that such an agreement constitutes a waiver of due process rights.

Second, the defendant's attempt to analogize this case to those involving contractual jury trial waivers is unpersuasive. As noted, there is no case law holding that a forum selection clause constitutes a waiver of a constitutional right. On the other hand, a waiver of the right to a jury trial does constitute a waiver of a constitutional right under Connecticut law. See *Skinner* v. *Angliker*, 211 Conn. 370, 373, 559 A.2d 701 (1989); *L & R Realty* v. *Connecticut National Bank*, 46 Conn. App. 432, 440, 699 A.2d 291, cert. granted, 243 Conn. 933, 702 A.2d 641 (1997); *Connecticut National Bank* v. *L & R Realty*, 46 Conn. App. 443, 445, 699 A.2d 297, cert. granted, 243 Conn. 933, 702 A.2d 641 (1997). Thus, forum selection clauses are clearly distinguishable from contractual jury trial waivers.

We conclude that the forum selection clause in the guarantee was valid and did not violate the defendant's due process rights. Thus, the trial court properly found that the California court had jurisdiction over the defendant and that the California judgment was valid.

## II

The defendant's second and third claims are based on article nine of the Uniform Commercial Code and concern the plaintiff's disposition of the equipment that had been the subject of the lease. In his second claim, the defendant argues that the trial court improperly denied his article nine special defense, which alleged that the plaintiff failed to give him notice of its intention to dispose of the collateral and failed to dispose of the collateral in a commercially reasonable manner. The trial court concluded that this special defense was a matter that should have been raised in the California proceeding and could be raised here only by opening the California judgment. Such opening would be a collateral attack on the California judgment and is prohibited by the full faith and credit clause of the United States constitution.

We agree with the trial court that "[a]bsent a finding that the California judgment was invalid because of lack of jurisdiction, this court could not, as defendant hoped, open the judgment and consider special defenses that could have been litigated in the California proceeding, since allowing such a collateral attack would be a failure to accord full faith and credit to a judgment that must be treated as res judicata as to all of the claims and potential defenses that could have been made to them."

The defendant contends that his special defense did not constitute an attack on the underlying bases of the California judgment, but rather that it concerns the

plaintiff's postjudgment activities.[1] The defendant then claims that he is entitled to a setoff based on the plaintiff's repossession and sale of the collateral. The trial court did grant the defendant a setoff of $40. The only evidence before the trial court regarding the satisfaction of the California judgment was that the collateral was sold for approximately $40. There was no other evidence before the trial court regarding the value of the collateral. Under these circumstances, the trial court awarded the only setoff warranted by the evidence before it.

The defendant's third claim is that the plaintiff is barred from recovering judgment in this state because it failed to comply with article nine of the Uniform Commercial Code. That claim is nothing more than an articulation of the defendant's special defense of unreasonable disposition of collateral. Since we conclude that the trial court properly denied the defendant's special defense, there is no reason to address the defendant's third claim separately.

The judgment is affirmed.

In this opinion the other judges concurred.

___

[1] The defendant, however, failed to allege in his special defense that the collateral was sold *after* the California judgment was rendered.