[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE:MOTION TO DISMISS # 101
The plaintiff, Harvey Merrick, filed a five-count complaint against the defendants, SandAir Nevada, Inc. (SandAir) and Steven Schaffer (Schaffer), on July 29, 1997. The plaintiff alleges the following CT Page 4881 facts. In 1991, the plaintiff, Schaffer and Henry Thaler entered into an agreement concerning their respective rights to a sand etching invention. The plaintiff was to receive a 20 percent interest in all sales and profits obtained from the commercialization of the invention and an equal percentage in any patents issued for the invention. Schaffer and Thaler transferred their interests in the invention to SandAir, which subsequently became named as the assignee of patents issued in 1993 and 1996. SandAir has also sold the invention for a profit. However, Schaffer and SandAir have refused to pay the plaintiff his share of profits earned from the commercialization of the invention and the patents, and have refused to recognize the plaintiff's rights as setforth in the agreement. The plaintiff has alleged the following causes of action: breach of contract; unjust enrichment; breach of the duty of loyalty, trust and good faith; conversion; and violation of the Connecticut Unfair Trade Practices Act.
On September 16, 1997, SandAir filed a motion to dismiss on the ground that the court I does not have personal jurisdiction over SandAir, which is a California corporation. The plaintiff filed a memorandum in opposition to the motion to dismiss on December 11, 1997. The matter was heard by the court on February 9, 1998.
"A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. . . . A ruling on a motion to dismiss is neither a ruling on the merits of the action . . . nor a test of whether the complaint states a cause of action. . . . Motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted; internal quotation marks omitted.) Malasky v. Metal Products Corp.,44 Conn. App. 446, 451-52, 689 A.2d 1145, cert. denied, 241 Conn. 906,695 A.2d 539 (1997). "The trial court must first decide whether the applicable long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory I requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process " (Internal quotation marks omitted.) Knipple v. Viking Communications. Ltd.,236 Conn. 602, 606, 674 A.2d 426 (1996).
A. General Statutes § 33-929 (e)[1]
The "long arm statute permits the exercise of jurisdiction over only those cases that arise out of' a defendant's forum contacts." Thomason v. Chemical Bank, 234 Conn. 281, 290, CT Page 4882661 A.2d 595 (1995). "[Section 33-929 (e)][2] directs us to inquire not only into the various elements of the plaintiff's cause of action, spelled out in the various subparts of subsection I [(e)], but also into the totality of contacts which the defendant may have with the forum. . . ." Id., 291.
1. General Statutes § 33-929 (e)(1)
General Statutes § 33-929 (e)(1) states in relevant part: "Every foreign corporation shall be subject to suit in this state, . . . whether or not such foreign corporation is transacting or has transacted business in this state . . . on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state . . . ."
SandAir argues that it and the plaintiff never entered into an agreement, as SandAir did not exist at the time the contract between the plaintiff, Schaffer and Thaler was executed SandAir also argues that the breach of contract claim is actually related to an agreement executed in California whereby SandAir acquired the patents from Quantum Group International, Inc.[3] SandAir further argues that pursuant to the agreement between Quantum Group International, Inc. and SandAir, no act necessary to effectuate such an agreement took place in Connecticut, and the contract was performed when the patent assignments were made in California. SandAir argues that there are no allegations in the complaint demonstrating that the SandAir/Quantum Group International, Inc. agreement was to be performed in Connecticut.
The plaintiff argues that the underlying contract between the plaintiff, Schaffer and Thaler was negotiated and executed in Connecticut. Thereafter, Schaffer and Thaler transferred their interests in the invention to SandAir. The plaintiff argues that SandAir was a party to this contract, because Schaffer and Thaler transferred their interests from Quantum Glass to Quantum Group International, Inc. which was incorporated to facilitate the patent I process. The plaintiff argues that the contract was therefore effectively assigned to SandAir, making SandAira party to the contract. The plaintiff also argues that SandAir performed substantial acts under the contract in Connecticut, such as having its representatives come in to Connecticut for several meetings relating to the manufacture of the invention.
"The phrase to be performed this state does not require performance in this state by the party over whom jurisdiction is CT Page 4883 sought. . . . Jurisdiction is appropriate where the contract in question clearly contemplated and required performance in this state by plaintiff . . . ." (Citations omitted; internal quotation marks omitted.) Litterbug v. McCann Real Equities DevelopmentCo., Superior Court, judicial district of New Haven at New Haven, Docket No. 379974 (February 21, 1996) (Freedman, J.). "[A] contract is made when and where the last thing is done which is necessary to create an effective agreement." (Internal quotation marks omitted.) Pettey v. Group 44, Inc., Superior Court, judicial district of Litchfield, Docket No. 067705 (February 26, 1996) (Pickett, J.). "For a court to assert jurisdiction over a foreign corporation pursuant to General Statutes § [33-929
(e)( 1)], the underlying contract must contemplate or encompass some contact with Connecticut. . . . Thus, the plaintiff must initially establish prima facie that a contract existed and that it was to be performed in Connecticut within the meaning of General Statutes § [33-929 (e)( 1)]. . . . However, the language of § [33-929 (e) (1 )] does not expressly require contemplated performance in this state by the party over whom jurisdiction is sought." (Citations omitted; internal quotation marks omitted. )Gamlestaden PLC v. Lindholm, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 130058 (February 28, 1996) (Karazin, J.).
"[A] contract cannot be enforced against a defendant who is not a party to the contract." Greenwood v. Litton MortgageService Center, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 314973 (February 10, 1995) (Hauser, J.). Therefore, the court may not obtain jurisdiction over SandAir under § 33-929 (e)(1) pursuant to the September 19, 1991 contract. That contract was signed only by the plaintiff, Schaffer and Thaler. (Motion To Dismiss, Exhibit C). SandAir was not a party to that contract. (Court Exhibit 1, Deposition of Stephen C. Schaffer, pp. 52-53). It was executed nine months before SandAir was incorporated on June 8, 1992. (Motion To Dismiss, Exhibit A, Affidavit of Stephen Roberts).
The transfer of assets from Quantum Group International, Inc. to SandAir in September of 1992 does not confer jurisdiction to the court under § 33-929 (e)(1), because that agreement was negotiated and completed in California and Nevada, was to be performed in California and/or Nevada, and none of the acts necessary to complete the transaction occurred in Connecticut. (Motion To Dismiss, Exhibit A, Affidavit of Stephen Roberts). Furthermore, SandAir, as a successor corporation to Quantum Group CT Page 4884 International, Inc., should not be held to succeed to the forum contacts of Quantum Group International, Inc., rather than simply to its liabilities. See Signore v. Command Manufacturing Inc.,
Superior Court, judicial district of New Haven at New Haven, Docket No. 333656 (September 29, 1993) (Hodgson, J.) (8 C.S.C.R. 1102, 1103). Accordingly, jurisdiction over SandAir is not conferred on the court through § 33-929 (e)(1).
2. General Statutes § 33-929 (e)(2)
SandAir argues that the plaintiff's complaint does not contain any allegations that would permit the court to infer that SandAir's past or present business contacts in Connecticut were in anyway related to the causes of action in the complaint. SandAir argues that the plaintiff's claims are materially different from those that could result from any product solicitation, since the plaintiff s claim arises out of the California agreement reached in September of 1992. The plaintiff argues that the court has long arm jurisdiction pursuant to §33-929 (e)(2), because SandAir repeatedly solicited sales in Connecticut, and has admitted doing so.
"For purposes of §[33-929(e)(2)], a plaintiff's cause of action aris[es] . . . out of . . . business solicited in this state' if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs. . . . A plaintiff need only demonstrate that the defendant could reasonably have anticipated being haled into court here by some person who had been, solicited in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation." Thomason v. Chemical Bank,supra, 234 Conn. 296.
The plaintiff has brought causes of action for breach of contract, unjust enrichment, breach of fiduciary duty, conversion, and unfair trade practices. These causes of action arise out of the parties' relationship as investors in an invention which in 1991 and 1992 had yet to be marketed. (Motion To Dismiss, Exhibit A, Affidavit of Stephen Roberts). These causes of action are materially different from the typical claims that would be brought by a Connecticut resident who purchased SandAir's product as a result of solicitations reaching CT Page 4885 Connecticut in 1996 and 1997. (Memorandum In Opposition To Motion To Dismiss, Exhibit D, Affidavit of Valerie Tavolacci; Exhibit E, Affidavit of Morris E. Cohen). Accordingly, the court cannot exercise personal jurisdiction over SandAir pursuant to §33-929 (e)(2).
3. General Statutes § 33-929 (e)(3)
General Statutes § 33-929 (e)(3) provides that "Every foreign corporation shall be subject to suit in this state . . . on any cause of action arising . . . (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers . . . ."
SandAir argues that this case is not about the production or distribution of goods, and so § 33-929 (e)(3) is not applicable. SandAir argues that this section of the statute was designed to reach foreign corporations that distribute defective products which make their way into Connecticut. The plaintiff argues that the claim for unjust enrichment arises out of SandAir's production, manufacture and distribution of the product with the expectation that the product was to be used or consumed in Connecticut.
"Section [33-929(e)(3)] requires, before personal jurisdiction obtains, a reasonable expectation that such goods' will be used or consumed in Connecticut and that such goods' are actually used or consumed in the state. . . [Sec. 33-929 (e)(3)] extends jurisdiction only to foreign companies who reasonably expect that the product they create will be used or consumed in Connecticut directly." Spahl v. Raymark Industries, Superior Court, judicial district of Windham at Putnam, Docket No. 050359,18 CONN. L. RPTR. 630 (September 9, 1996) (Sferraza, J.).
Here, there is evidence that SandAir solicits retail business in Connecticut through the QVC television network, which results in offers to purchase the retail products of SandAir. (Motion To Dismiss, Exhibit A, Affidavit of Stephen Roberts). SandAir's product has been purchased by at least one resident of Connecticut through the QVC television network. (Memorandum In Opposition To Motion To Dismiss, Exhibit D, Affidavit of Valerie CT Page 4886 Tavolacci). In addition, the plaintiff has alleged that as a result of SandAir's agreement with Schaffer and Quantum Group International, Inc. in 1992, and the subsequent distribution and sale of the product in Connecticut, the plaintiff has been deprived of the benefits of the September 1991 agreement between the plaintiff, Schaffer and Thaler. Accordingly, the court may exercise personal jurisdiction over SandAir pursuant to §33-929 (e)(3), as the product was distributed and purchased in Connecticut, thereby satisfying the reasonable expectation requirement found in the statute. Moreover, the plaintiff's causes of action can be said to arise out of SandAir's production and distribution of goods in Connecticut. A causal connection exists between the wrongful production of the defendants' product and the plaintiff's causes of action. Had the defendants not produced and distributed the product, the plaintiff would not have causes of action for loss of profits from the commercialization of the product and the patents.[4]
B. Minimum Contacts
"The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness.[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. . . ." Phoenix Leasing, Inc. v. Kosinski,47 Conn. App. 650, 654, A.2d (1998). "At the same time, jurisdiction may not be asserted in such a way as to make litigation so gravely difficult and inconvenient that a party .; unfairly is at a severe disadvantage in comparison to his opponent." (Internal quotation marks omitted.) United States Trust Co. v. Bohart, 197 Conn. 34,42, 495 A.2d 1034 (1985).
SandAir has such contacts with Connecticut that it should reasonably anticipate being haled into court here. SandAir has admitted that it both solicits business in Connecticut, and purchases supplies to manufacture its products from vendors located in Connecticut. (Motion To Dismiss, Exhibit A, Affidavit of Stephen Roberts). In addition, SandAir has raised no issue as to the fairness of the plaintiff's case moving forward in a Connecticut court. Furthermore, [a] corporation doing business in the state at the time of service of the summons is subject to personal jurisdiction even with respect to a cause of action which arose at a time when the corporation was not doing business in the state." 19 C.J.S. Corporations § 942 (1990). Here, CT Page 4887 there is evidence that a Connecticut resident purchased the defendants' product on September 24, 1997. (Memorandum In Opposition To Motion To Dismiss, Exhibit D, Affidavit of Valerie Tavolacci). The complaint was filed on July 29, 1997. Therefore, SandAir was doing business in Connecticut at the time service was made, making SandAir subject to the court's jurisdiction, even with respect to the 1991 and 1992 agreements. Accordingly, the due process requirements of foreseeability and fairness have been met.
The court may exercise personal jurisdiction over SandAir Nevada, lnc., pursuant to General Statutes § 33-929 (e)(3). SandAir Nevada, Inc. has sufficient minimum contacts with Connecticut to satisfy the constitutional due process analysis. For the foregoing reasons, defendant's motion to dismiss is denied.
STODOLINK, J.